UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARIA CLARA SLANINA,

    Plaintiff,

v.                                                     Case No.:  8:21-cv-37-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

# OPINION AND ORDER

Plaintiff Maria Clara Slanina seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint legal memorandum setting forth their respective positions. As explained below, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A. Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v.*

*Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment,

then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

### C.  Procedural History

Plaintiff filed an application for a period of disability and disability insurance benefits on April 30, 2018, alleging disability beginning January 1, 2017. (Tr. 74, 170-71). Plaintiff later amended the onset date to January 1, 2018. (Tr. 15, 34). The application was denied initially and on reconsideration. (Tr. 74, 92). Plaintiff requested a hearing and a hearing was held on May 14, 2020, before Administrative Law Judge ("ALJ") Donald Smith. (Tr. 32-60). On June 25, 2020, the ALJ entered a decision finding Plaintiff not disabled from January 1, 2018, through the date of the decision. (Tr. 15-25).

Plaintiff requested review of the hearing decision, but the Appeals Council denied Plaintiff's request on November 4, 2020. (Tr. 1-5). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on January 7, 2021, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 19).

### D.  Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2024. (Tr. 17). At step one of the sequential evaluation, the ALJ found that Plaintiff had engaged in substantial gainful activity during the following periods: January – March 2018, and July – September 2018. (Tr. 18). However, the ALJ found that there had been a continuous 12-month

period during which Plaintiff did not engage in substantial gainful activities and the decision addressed this period. (Tr. 18). At step two, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease, muscular dystrophy, narcolepsy, and sleep apnea." (Tr. 18). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. 19).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except the claimant can lift twenty pounds occasionally and ten pounds frequently; stand or walk six hours per day and sit six hours per day; the claimant can never climb ladders, ropes, or scaffolds; the claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; the claimant can frequently reach, handle, finger, and feel; but must avoid vibration, temperature extremes, pulmonary irritants, hazardous machinery, and heights.

(Tr. 20).

At step four, the ALJ found that Plaintiff was able to perform her past relevant work as a registered nurse. (Tr. 23). The ALJ determined that this work does not require the performance of work-related activities precluded by the RFC. (Tr. 23). Alternatively, at step five, the ALJ relied on the vocational expert's responses to Vocational Interrogatories to find that considering Plaintiff's age (39 on the alleged

onset date), education (at least high school, with a master's degree of science in nursing), work experience, and RFC, there are jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 23-24, 38). Specifically, the ALJ found that Plaintiff could perform such occupations as:

(1) final inspector, DOT 727.687-054,[1] light, unskilled, SVP 2

(2) filter assembler, DOT 739.687-026, light, unskilled, SVP 2

(3) marker, DOT 209.587-034, light, unskilled, SVP 2

(Tr. 24, 366). The ALJ concluded that Plaintiff had not been under a disability from January 1, 2018, through the date of the decision. (Tr. 25).

## II.   Analysis

On appeal, Plaintiff raises two issues: (1) whether the ALJ properly evaluated Plaintiff's subjective complaints of symptoms; and (2) whether the ALJ accorded the opinion of Plaintiff's treating physician appropriate weight. (Doc. 23, p. 9, 19).

### A.   Subjective Complaints

Plaintiff contends that when the ALJ determined that Plaintiff's statements concerning her symptoms were not entirely consistent with the medical and other evidence of record, the ALJ failed to examine some factors listed in the Regulations. (Doc. 23, p. 12). Plaintiff also contends that the ALJ erred when he only summarized the objective medical evidence and the opinion evidence, and then concluded that

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

such evidence did not establish that Plaintiff's impairments were of a disabling nature. (Doc. 23, p. 12). Thus, Plaintiff claims that the ALJ did not comply with SSR 16-3p and substantial evidence does not support the ALJ's findings on Plaintiff's subjective complaints. Contrary to Plaintiff's arguments, substantial evidence supports the ALJ's determination of Plaintiff's subjective symptoms.

A claimant may establish that she is disabled through her own testimony of pain or other subjective symptoms. *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 867 (11th Cir. 2019) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). In such a case, a claimant must establish:

> "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."

*Id.* (quoting *Dyer*, 395 F.3d at 1210).

When evaluating a claimant's testimony, the ALJ should consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication to alleviate pain or other symptoms; (5) treatment other than medication for relief of pain or other symptoms; (6) any measures a claimant uses to relieve pain or other symptoms; and (7) other factors concerning a claimant's functional limitations and restrictions due

to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 867 (11th Cir. 2019).

The ALJ should consider these factors along with all of the evidence of record. *Ross*, 794 F. App'x 867. If the ALJ discredits this testimony, then the ALJ "'must clearly articulate explicit and adequate reasons for' doing so." *Id.* (quoting *Dyer*, 395 F.3d at 1210). The ALJ may consider the consistency of the claimant's statements along with the rest of the record to reach this determination. *Id.* Such findings "'are the province of the ALJ,' and we will 'not disturb a clearly articulated credibility finding supported by substantial evidence.'" *Id.* (quoting *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014)). A decision will be affirmed as long as the decision is not a "broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Dyer*, 395 F.3d at 1211 (quotation and brackets omitted).

In the decision, the ALJ made these general findings on Plaintiff's subjective complaints:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 21).

The ALJ acknowledged that Plaintiff sought treatment for Type 1 myotonic dystrophy, and complained of daytime sleepiness, severe narcolepsy, fatigue, muscle soreness, muscle weakness, and difficulty opening containers. (Tr. 18, 20). She claimed these symptoms prevented her from working full-time as a nurse. (Tr. 20). Despite these allegations, the ALJ found that the majority of the physical examinations revealed unremarkable findings. (Tr. 21). While Tuan Vu, M.D. noted some bitemporal wasting and delayed reflexes, the ALJ pointed out that Dr. Vu described Plaintiff as appearing in no acute distress with normal gait, normal muscle tone, and intact sensation, as well as a normal ability to grip and release. (Tr. 21). The ALJ found Plaintiff's allegations of daily disabling pain and weakness to be inconsistent with the complete lack of abnormal findings. (Tr. 21).

In further support of his opinion, the ALJ noted that Plaintiff did see specialists for her impairments, but the office visits occurred less frequently than expected for someone with these extreme limitations. (T. 21). The ALJ noted that Plaintiff received prescribed treatment, which afforded at least some relief for these alleged symptoms when Plaintiff complied. (Tr. 21). The ALJ used the example that Plaintiff's treating physician found that narcolepsy was well treated and Plaintiff acknowledged that her symptoms of fatigue improved with light therapy. (Tr. 21). Treating physician Sagarika Nallu, M.D. found that if Plaintiff adhered to this therapy, she was confident that Plaintiff's fatigue and daytime somnolence will

continue to improve. (Tr. 21). And in April 2020, the ALJ noted that Plaintiff reported her energy in the morning improved and she noticed a significant improvement in fatigue after starting new medication. (Tr. 21).

The ALJ also considered Plaintiff's daily activities and found they showed fewer limitation than alleged. (Tr. 21). For example, the ALJ found Plaintiff continued to care for her child and continued to drive, including picking up her child at night from gymnastics. (Tr. 21). If the allegations were as extreme as Plaintiff alleged, the ALJ explained that Plaintiff would not be driving based on the allegations of narcoleptic episodes and extreme fatigue. (Tr. 21-22). Lastly, the ALJ noted that Plaintiff continued to work as a nurse on a part-time basis throughout the period at issue, showing that at least at times, her abilities were somewhat greater than Plaintiff had generally reported. (Tr. 22). Plus, Plaintiff worked as a nurse within the neonatal intensive care unit, which the ALJ found required intense focus and ability. (Tr. 22). The ALJ reasonably questioned whether an employer would allow someone with Plaintiff's alleged extreme limitations to continue to work in such a sensitive environment if she displayed such signs of extreme fatigue and narcoleptic episodes on the jobsite. (Tr. 22).

The ALJ clearly articulated reasons why he did not fully credit Plaintiff's subjective complaints. Plaintiff does not specify which factor the ALJ failed to examine. Nor does Plaintiff dispute the ALJ's reasons for his findings. Here, the ALJ

did consider the factors when considering Plaintiff's subjective complaints and articulated clear reasoning in reaching his decision. And the ALJ did not rely solely on objective medical evidence to reach his conclusion, but considered the objective and subjective evidence in determining that Plaintiff's subjective complaints were not entirely consistent with the medical and other evidence of record. In considering the evidence as a whole, substantial evidence supports the ALJ's determination of Plaintiff's subjective complaints and there is no error.

B.  **Physicians' Opinions**

Plaintiff contends that her treating physician, Dr. Nallu completed a Medical Source Statement, which offered her opinion on Plaintiff's limitations in a workplace setting. (Doc. 23, p. 20).[2] Plaintiff argues that the ALJ did not properly weigh Dr. Nallu's opinion. (Doc. 23, p. 21).

The regulations for disability cases filed after March 27, 2017 – such as this one – changed and an ALJ no longer defers or give any specific evidentiary weight to a medical opinion. 20 C.F.R. § 404.1520c(a), 20 C.F.R. § 416.920c(a).[3] Thus, an

---

[2] At one point, Plaintiff cites Dr. Vu's medical source statement, but then limits her argument concerning any error to Dr. Nallu's opinion. (Doc. 23, p. 20-21). The Court finds that if Dr. Vu's medical source statement constitutes an opinion – which it appears it does not because it includes no work-place limitations – the issue is waived. (Tr. 1248-50); *see Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (holding claimant waived issue because he did not elaborate on claim or provide citation to authority regarding claim).

[3] In a recent opinion, the Eleventh Circuit found:

> As an initial matter, Walker filed for DIB in 2018, so the new regulations apply to

ALJ no longer uses the term "treating source" and does not defer or give specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Torres v. Comm'r of Soc. Sec.*, No. 6:19-cv-1662-ORL-PDB, 2020 WL 5810273, at *2 (M.D. Fla. Sept. 30, 2020) (citing 20 C.F.R. § 404.1520c(a)).

Instead, an ALJ assesses the persuasiveness of a medical source's opinions given the following five factors, with the first two being the most important: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(a)-(c); 20 C.F.R. § 404.920c(a)-(c). An ALJ may but is not required to explain how he considers factors other than supportability and consistency, unless two or more opinions are equally persuasive on the same issue. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. 416.920c(b)(2).

---

his claim. *See id.* [20 C.F.R.] § 404.1520c. For this reason, Walker's reliance on an unpublished case from 2015, which applied the prior version of the regulations, is inapplicable because the ALJ was not required under the new regulations to provide more weight to Dr. Fava's opinion absent good cause, or state with clarity his reasons for not doing so.

*Walker v. Soc. Sec. Admin., Comm'r*, No. 21-12732, 2022 WL 1022730, at *2 (11th Cir. Apr. 5, 2022). Thus, the ALJ did not err in following the requirements of the new regulations and not considering the "weight" of Dr. Nallu's opinion. In any event, the Court will consider whether the ALJ properly considered the persuasiveness of her opinion.

For supportability, the revised rules provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. 416.920c(c)(1). For consistency, the revised rules provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520(c)(2); 20 C.F.R. § 416.920c(c)(2).

The new regulations also differentiate between medical opinions and "other medical evidence." 20 C.F.R. § 404.1513(a)(2)-(3). "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities listed in paragraphs (a)(2)(i) through (iv). 20 C.F.R. § 404.1513(a)(2). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. 404.1513(a)(3).

The ALJ summarized Dr. Nallu's Sleep Disorders Medical Source Statement. (Tr. 22-23, 1128-31). Of import, the ALJ noted that Dr. Nallu found Plaintiff to have 1-2 daytime sleep attacks per day that lasted 30-60 minutes; Plaintiff could sit for 4 hours and stand/walk for 2 hours in an 8-hour workday, Plaintiff would need unscheduled breaks of 30 minutes for daytime sleep attacks, adverse effects of medication, and chronic fatigue; Plaintiff must avoid even moderate exposure to driving, avoid all exposure to moving machinery, avoid working alone without supervision, and avoid power tools; and Plaintiff would be off task 25% or more per workday and miss more than four days per month of work. (Tr. 22, 1128-30).

The ALJ found Dr. Nallu's treatment notes did not support her opinions. (Tr. 22). The ALJ determined that the treatment notes consistently contain records of Plaintiff's improvement with the prescribed light therapy and expressed confidence that her symptoms would continue to improve if Plaintiff complied with the prescribed treatment. (Tr. 22). The ALJ further found this opinion unsupported and inconsistent with the complete lack of documented daily sleep attacks as described in the opinion. (Tr. 22). And the ALJ found the opinion inconsistent with Plaintiff activities of daily living, such as her ability to drive, provide childcare, and serve as a nurse on a part-time basis. (Tr. 22-23). Thus, the ALJ found Dr. Nallu's opinion unpersuasive.

In sum, the ALJ considered the supportability and consistency of Dr. Nallu's opinion with her treatment records and the medical and other evidence of record. The ALJ did not find that Dr. Nallu's own treatment records supported her opinion, and substantiated it with examples when it did not. The ALJ also did not find Dr. Nallu's opinion consistent with other medical records and with Plaintiff's activities of daily living. And again, the ALJ cites instances to support these statements. After consideration of the evidence as a whole, substantial evidence supports the ALJ's determination as to the persuasive of the medical opinion evidence.

### III. Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on May 12, 2022.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties